# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 09-1178


**KENWORTH OF SOUTH LOUISIANA, LLC**

**VERSUS**

**DEE BRISTOW, ET AL.**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-20084890
HONORABLE EDWARD D. RUBIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

### SHANNON J. GREMILLION
### JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of, James T. Genovese, Shannon J. Gremillion, and David E. Chatelain,[1] Judges.

**AFFIRMED.**



**James Isaac Funderburk**
**Funderburk & Herpin**
**P. O. Drawer 1030**
**Abbeville, LA 70511-1030**
**(337) 893-8140**
**Counsel for Defendant/Appellee:**
**Longman Russo, APLC**

---

[1]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Joseph C. Giglio  Jr.**
**Liskow & Lewis**
**P. O. Box 52008**
**Lafayette, LA 70505-2008**
**(337) 232-7424**
**Counsel for Third-Party Appellee:**
**Kenworth Truck Company, a Division of PACCAR, Inc.**

**Wayne Allen Shullaw**
**Attorney at Law**
**P. O. Box 4815**
**Lafayette, LA 70502-4815**
**(337) 266-2310**
**Counsel for Third-Party Appellants:**
**Dee Bristow**
**Marilyn Price Bristow**
**Anthony Wayne Price**
**Janet Price Martin**

**Ronald Joseph White**
**John Herr Musser,  V**
**Donald R. Wing**
**Murphy, Rogers & Sloss**
**701 Poydras St., Ste 400**
**New Orleans, LA 70139**
**(504) 523-0400**
**Counsel for Third-Party Appellee:**
**Kenworth of South Louisiana, LLC**

**GREMILLION, Judge**.

The third-party plaintiffs-appellants, Dee Bristow, Marilyn Price Bristow, Anthony Wayne Price, and Janet Price Martin (the Bristow/Prices), appeal the trial court's grant of summary judgment in favor of the third-party defendant-appellee, Kenworth Truck Company, a Division of PACCAR, Inc. (Kenworth). For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Bristow/Prices were the owners of Acadiana Mack Sales and Service, Inc. (Acadiana Mack), a truck dealership.[2] Kenworth of South Louisiana, LLC (KSL), purchased the shares of stock of Acadiana Mack on April 30, 2008 pursuant to a Compromise and Settlement Agreement and an Assumption Agreement. In February 2008, KSL received a balance sheet indicating a total net worth of Acadiana Mack of $1,413,456, including cash on hand in the amount of $557,014. KSL's August 2008 petition claims that in the two months following issuance of the balance sheet, the Bristow/Prices "looted the corporation's bank accounts," issuing checks amounting to $469,108.67 to its shareholders and a check to Longman Russo, APLC, the law firm that negotiated the Stock Purchase Agreement on their behalf, in the amount of $72,121, the day before the closing on April 29, 2008.[3] KSL claimed

---

[2]Acadiana Mack was a franchisee of Kenworth. Kenworth had a right of first refusal regarding any sale of Acadiana Mack stock. Kenworth exercised its right and later assigned the Stock Purchase Agreement to KSL. Acadiana Mack had previously tried to transfer the stock to a corporation named the Mack Investment Group, but was prevented from doing so by Kenworth's exercise of its right of first refusal. Litigation ensued between the Mack Investment Group, the Bristow/Prices, Kenworth, and Acadiana Mack. That matter was settled in the April 30, 2008 Compromise and Settlement Agreement.

[3]The checks issued to the shareholders include:

| | |
|---|---|
| March 20, 2008 | $13,580.00 payable to A.Wayne Price |
| April 24, 2008 | $39,153.00 payable to Marilyn Price Bristow |
| April 24, 2008 | $16,506.00 payable to A.Wayne Price |
| April 24, 2008 | $60,172.00 payable to Janet Price Martin |
| April 30, 2008 | $267,576.67 payable to Marilyn Price Bristow |

1

these disbursements rendered the former Acadiana Mack insolvent.

In their answer to KSL's petition, the Bristow/Prices filed a reconventional demand against KSL and filed a third-party demand against Kenworth for indemnification. Kenworth answered the third-party demand pleading the affirmative defense of transaction or compromise, urging that all of the matters sued upon had been compromised and settled in the Compromise and Settlement Agreement dated April 30, 2008. In January 2009, Kenworth filed a motion for summary judgment.[4] Following a March 2009 hearing on the motion, the trial court granted Kenworth's motion for summary judgment. The Bristow/Prices now appeal and assign as error:

1. The trial court's grant of summary judgment on the third-party demand in the absence of an affidavit in support thereof.

2. The trial court's grant of summary judgment on the third-party demand based on a compromise and settlement agreement evidencing no intent by the parties to waive indemnity.

3. The trial court's grant of summary judgment on the third-party demand based on a compromise and settlement agreement in violation of Louisiana law.

4. The trial court's grant of summary judgment on the third-party demand prior to the completion of adequate discovery.

## SUMMARY JUDGMENT

On appeal, summary judgments are reviewed de novo. *Magnon v. Collins*, 98-2822 (La.7/7/99), 739 So.2d 191. Thus, the appellate court asks the same questions the trial court asks to determine whether summary judgment is appropriate.

---

[4]Longman Russo also filed a motion for summary judgment. The hearing on the motion occurred at the same time as Kenworth's motion and was also granted in Longman Russo's favor. It is not a party to this appeal.

2

*Id.* This inquiry seeks to determine whether any genuine issues of material fact exist and whether the movant is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B) and (C) . This means that judgment should be rendered in favor of the movant if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show a lack of factual support for an essential element of the opposing party's claim. *Id.* If the opposing party cannot produce any evidence to suggest that he will be able to meet his evidentiary burden at trial, no genuine issues of material fact exist. *Id.*

Material facts are those that determine the outcome of the legal dispute. *Soileau v. D & J Tire, Inc.,* 97-318 (La.App. 3 Cir. 10/8/97), 702 So.2d 818, *writ denied*, 97-2737 (La. 1/16/98), 706 So.2d 979. In deciding whether certain facts are material to an action, we look to the applicable substantive law. *Id.* Finally, summary judgment procedure is favored and designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ.P. art. 966(A)(2).

**EVIDENTIARY SUPPORT**

In this assignment of error, the Bristow/Prices argue that the trial court erred in granting summary judgment based on the undated and unverified Compromise and Settlement Agreement of the prior litigation that occurred between the Bristow/Prices, Acadiana Mack, the Mack Investment Group, and Kenworth when Kenworth exercised its right of first refusal and did not allow the Mack Investment Group to purchase Acadiana Mack's stock.

Louisiana Code of Civil Procedure Article 966(B) allows for pleadings and admissions on file to serve as adequate evidence to prove that no genuine issues of fact exists. The Bristow/Prices acknowledged the validity of the Compromise and

3

Settlement Agreement, the Assumption Agreement, and the Stock Purchase Agreement multiples times in the record. Additionally, the trial court took judicial notice of the prior record. *See State v. Konkle,* 03-0512 (La.App. 3 Cir. 11/12/03), 865 So.2d 812, *writ denied,* 03-3415 (La. 2/20/04), 866 So.2d 818. Accordingly, this assignment of error is without merit.

## LA.R.S. 32:1267/COMPROMISE AND SETTLEMENT AGREEMENT

*Louisiana Revised Statute 32:1267(B)(6)*

In assignments of error two and three, the Bristow/Prices argue that the Compromise and Settlement Agreement does not indicate an intent by them to waive indemnity and that they are entitled to indemnification as a matter of law pursuant to La.R.S. 32:1267(B)(6). In their brief, they argue that Kenworth "acknowledged that they would indemnify them as required by law" pursuant to an email sent February 11, 2008, and that the Bristow/Prices did not waive the indemnity owed to them under La.R.S. 32:1267(B)(6). The email states:

> Dee:
>
> As discussed, please see section 6 below which should help put your mind at ease. This is from LSA-R.S. 32:1268(B):
>
> (6) The dealer shall not have any liability to any person as a result of the manufacturer's exercising its right of first refusal and the manufacturer or distributor shall assume the defense of the selling dealer for any claim by the proposed owner or transferee arising from the exercise of the right of first refusal.
>
> Kenworth is ready to work with you to ensure your deal closes as soon as possible.
>
> Thanks,
> Sean Edwards
> Director of Network Development
> Kenworth Truck Company

There is no dispute that when Kenworth exercised its right of first refusal

4

and stepped into the shoes of the Mack Investment Group, it expressly contractually bound itself in the December 28, 2007 Stock Purchase Agreement to indemnify Acadiana Mack for any litigation arising out of its exercise of the right of first refusal.[5] Indeed, litigation ensued and Kenworth fulfilled its obligation of indemnification in the previous suits. Moreover, the plain language of the La.R.S. 32:1267(B)(6)(emphasis added) makes it clear that the statutory imposition of indemnification applies to disputes arising from the manufacturer's exercise of its right of first refusal :

> B. In the event of a proposed sale or transfer of a dealership and if the franchise agreement has a right of first refusal in favor of the manufacturer or distributor, then, notwithstanding the terms of the franchise agreement, the manufacturer or distributor shall be permitted to exercise a right of first refusal to acquire the motor vehicle dealer's assets or ownership if all of the following requirements are met:
>
> . . . .
>
> (6) The dealer shall not have any liability to any person as a result of a manufacturer's exercising its right of first refusal and the manufacturer or distributor shall assume the defense of the selling dealer for any claim buy the proposed owner or transferee *arising from the exercise of the right of first refusal.*

Although the Bristow/Prices strenuously argue that the current lawsuit arises out of Kenworth's exercise of its right of first refusal, the facts are abundantly clear that it does not. The sale of Acadiana Mack to KSL, based on Kenworth's exercise of its right of first refusal, was complete and final. A lawsuit, filed months after the sale is finalized, alleging that the former shareholders looted the company has no relation

---

[5]Section 7.2 of the Stock Purchase Agreement states:

Subject to the provisions of this Section 7, the Buyer [Kenworth] shall indemnify the Sellers [the Bristow/Prices] from, against and in respect of any and all liabilities or obligations actually incurred which result from (I) the breach of any warranty or representation or of any obligation of Buyer [Kenworth] pursuant to this Agreement, and (ii) the breach of any covenant of the Buyer [Kenworth] set forth in this Agreement.

to Kenworth's exercise of its right of first refusal. Any buyer of the franchise, even the one that Acadiana Mack had desired to sell to, could have filed this claim against the shareholders for theft. The dealer's exercise of its right of first refusal has no relationship whatsoever to KSL's suit against the Bristow/Prices. Clearly, La.R.S. 32:1267(B)(6) is meant to protect a dealer from litigation when a manufacturer bars the sale of the company to a third party by exercising its right of first refusal. The present lawsuit does not stem from that situation, and there is no indemnity due under La.R.S. 32:1267(B)(6).

*The Compromise and Settlement Agreement*

The Compromise and Settlement Agreement clearly sets forth the procedure for termination of any business relationship, including a claim for indemnification, between Kenworth and the Bristow/Prices. It states in pertinent part:

> 12.2 In consideration of the promises and covenants made by Kenworth in this Settlement Agreement and subject to the exclusions set forth in 12.8, as of the Closing Date, and the provisions of Section 13.1, the Acadiana Released Parties hereby jointly and severally release and forever discharge Kenworth from any and all claims, counterclaims, demands, obligations, actions, causes of action, judgments, rights, damages, costs, losses, expenses, attorney's fees and compensation of any nature whatsoever, whether based in tort, contract, common law and/or statutory fraud, civil conspiracy, breach of fiduciary duty, breach of any implied covenant of good faith and fair dealing, or other theory of recovery, and for all damages of whatsoever nature which the Acadiana Released Parties have, jointly or severally, against Kenworth, arising out of acts, omissions and/or transactions occurring prior to the date of this Settlement Agreement, including, without limitation, all claims and counterclaims asserted or that could have been asserted by the Acadiana Released Parties in the Lawsuit or otherwise relating to the business relationship of the parties.

The Bristow/Prices argue that the above release says nothing about "waiving the indemnity provided for by law under R.S. 32:1267." As we have

6

previously discussed, there is no indemnity provided by law under these facts. Additionally, the release quite clearly indicates the finality of the relationship between Kenworth and the Bristow/Prices.

Finally, the Bristow/Prices argue that the Compromise and Settlement Agreement is invalid under Louisiana law because "[i]n the present case, there was no dispute between the [Bristow/Prices] and [Kenworth]. They both got sued by the Mack Investment Group. Consequently, there was no dispute between the parties to be settled." Louisiana Civil Code Article 3071 defines a compromise as "a contract whereby the parties, through concessions made by one or more of them, settle a dispute or uncertainty concerning an obligation or other legal relationship."

Notwithstanding the fact that the Compromise and Settlement Agreement was a valid compromise between the Bristow/Prices and Kenworth as it settled multiple disputes arising from Kenworth's exercise of its right of first refusal, the Bristow/Prices now argue that they did not intend to settle the claims that they have set forth in their third-party demand. There simply is no merit to this argument. The Bristow/Prices are bound by the terms of the Compromise and Settlement Agreement, which clearly dispenses with any indemnity owed by Kenworth. These assignments of error are without merit.

**DISCOVERY**

In their final assignment of error, the Bristow/Prices argue that summary judgment was inappropriate because Kenworth had not provided discovery materials. The Bristow/Prices' claims for indemnity under either the December Stock Purchase Agreement or La.R.S. 32:1267 require no other documentation beyond what already existed in the record, and they have failed to provide any evidence to suggest

7

otherwise. The Bristow/Prices do not have any factual support for their claim that Kenworth owes them indemnity. Accordingly, this assignment of error is without merit.

## CONCLUSION

There is no genuine issue of material fact. The Bristow/Prices are unable to meet their burden of proving that Kenworth owes them indemnity. Accordingly, the judgment of the trial court in favor of Kenworth Truck Company, a Division of PACCAR, Inc., granting its motion for summary judgment, is affirmed. All costs of this appeal are assessed against Dee Bristow, Marilyn Price Bristow, Anthony Wayne Price, and Janet Price Martin.

**AFFIRMED.**